UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SABAL TRAIL TRANSMISSION, LLC,

                Plaintiff,

vs.

+/- 1.823 ACRES OF LAND IN HAMILTON
COUNTY, FLORIDA, et al.,

                Defendants.

Case Nos.:      3:16-cv-267-J-32MCR
                        3:16-cv-276-J-32JRK[1]
                        3:16-cv-314-J-32PDB
                        3:16-cv-318-J-32JRK

_____/

## ORDER

In these condemnation cases, the condemnor seeks to exclude the landowners' expert witnesses in the compensation phase. These cases are before the Court on Plaintiff Sabal Trail's motions to exclude the expert testimony of Matthew Ray, the defendant-landowners' appraiser, and Joshua A. Harris, Ph.D., a real estate economist, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rules of Evidence 403 and 702. Also before the Court are the defendants' responses to the Daubert motions, the parties' notices of supplemental authority, and the defendants' supplemental responses. The Court held a non-evidentiary Daubert

---

[1]     To save space, the numbers but not the styles of the other cases before the undersigned are listed.

1

hearing on January 24, 2018. (See Case No. 3:16-cv-267-J-32MCR, Doc. 92). The Court will grant the motion with respect to Mr. Ray to the extent described below, but the Court defers a final ruling with respect to Dr. Harris.

Under the Natural Gas Act and a Certificate of Public Convenience and Necessity, Sabal Trail sought to condemn easements on the landowners' property to install a natural gas pipeline. The properties are rural tracts in Hamilton County and Suwannee County, Florida, which are generally suitable for rural residential or agricultural use. The Court allowed Sabal Trail to take possession of the easements. The proceedings are now at the stage where a jury must determine how much Sabal Trail owes the defendants for the takings.

In preparation for the trials on compensation, the defendants hired two experts to assist with valuation. The first expert is Matthew Ray, an appraiser who assessed the value of the condemned easements and severance damages. The second expert is Dr. Harris, a real estate economist, who surveyed approximately 23 real estate agents or brokers regarding their opinions on the effect a natural gas pipeline would have on property values (a so-called "contingent valuation" survey). Dr. Harris also reviewed literature on the impact that overhead power transmission lines, natural gas pipelines, and pipeline accidents purportedly have on buyers' perceptions of property values. The gist of Dr. Harris's testimony is that public awareness and fear of pipeline accidents would cause the average buyer to be less willing to buy land situated over a pipeline. However, Dr. Harris does not offer any opinion about the compensation owed for any specific property.

Sabal Trail moves to exclude both experts' testimonies under Daubert and Federal Rule of Evidence 702, arguing that their testimonies are not the result of reliable methods or sufficient facts and data. Sabal Trail also argues that their testimonies are inadmissible under Rule 403 because they threaten to make the health and safety risks of a pipeline rupture an improper feature of the trials.

Sabal Trail filed similar Daubert motions in Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake County, Florida, Case No. 5:16-cv-178-JSM-PRL (M.D. Fla.), Doc. 50, Doc. 51, in which it sought to exclude the same experts' testimonies. My colleague, Judge James S. Moody, Jr., granted both motions for many of the same reasons argued by Sabal Trail before this Court. Id., Doc. 71 ("Moody Daubert Order"). Likewise, Sabal Trail filed similar Daubert motions in Sabal Trail Transmission, LLC v. 0.981 Acres of Land in Levy County, Florida, Case No. 1:16cv97-MW/GRJ (N.D. Fla.), Doc. 48, Doc. 49. The Honorable Mark Walker largely denied both motions, although Judge Walker identified three issues with Ray's opinion that required correction: (1) Ray could not use the terms "probable damage radius" or "probable impact radius" in his testimony, (2) Ray could not testify about potential future land use regulations, and (3) Ray's severance damage study double-counted the value of the easements taken. Id., Doc. 69 ("Walker Daubert Order"). Otherwise, Judge Walker admitted the balance of Dr. Harris's and Mr. Ray's opinions.

## I. Matthew Ray's Testimony

The Court does not find Ray's testimony regarding the "before" value of the properties to be inadmissible in these cases, nor does it find his opinion that the

3

easements take 95% of the value of the land covered by the easements to be inadmissible. As such, Ray can testify regarding the "before" value of the properties and the value of the easements themselves. However, for many of the reasons discussed in Part B.3 of the Discussion section of Judge Moody's order, the Court finds that Ray's testimony concerning severance damages is inadmissible in its current form. (Moody Daubert Order at 15-17, 19-20).

For one, Ray relies on the concept of a "potential impact radius" ("PIR") as a means to determine the reach of severance damages, but that is not an accepted appraisal method. See Texas Gas Transmission, LLC v. 18.08 Acres, No. 2:08CV420-B-V, 2012 WL 6057991, at *9 (N.D. Miss. Dec. 6, 2012) (appraiser "admitted that using a hazard zone … was not an appraisal principle of any kind, had not been subject to peer review, had not been taught by any instructor in appraisal techniques, and was unique to this appraisal."); Rockies Exp. Pipeline, LLC v. 4.895 Acres of Land, No. 2:08-CV-554, 2011 WL 1043493, at *2 (S.D. Ohio Mar. 16, 2011) (rejecting the PIR as an acceptable appraisal method in calculating severance damages). There is no indication that the PIR appraisal method has been subjected to peer-review or achieved acceptance in the appraisal community. "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." Daubert, 509 U.S. at 593 (citation omitted). The lack of peer review of the PIR method, while not dispositive, weighs against finding it to be reliable. See id. at 594. Likewise, the lack of widespread acceptance of the PIR method is an "important factor" in ruling it

4

inadmissible, because "'a known technique which has been able to attract only minimal support within the community,' Downing, 753 F.2d, at 1238[2], may properly be viewed with skepticism." Daubert, 509 U.S. at 594. As such, the Court does not find Ray's use of the PIR in his appraisals to be a reliable methodology.

Second, Ray's reports "bastardiz[e]" the term "potential impact radius" by transforming it into such ominous phrases as "probable impact radius" and "probable damage radius," which implies (without supporting evidence) that a pipeline explosion is likely. (Moody Daubert Order at 15-17). Such terminology is unduly prejudicial because it threatens to confuse the issues by making the trial about the potential health and safety risks of a pipeline accident, not compensation for the property taken. See Florida Power & Light Co. v. Jennings, 518 So. 2d 895, 897-98 (Fla. 1987) (allowing scientific testimony about the possible health hazards of power transmission lines, "albeit under the guise of explaining why the presence of transmission lines depreciates the value of adjacent property, is irrelevant to the issue of full compensation. Not only does allowing such scientific testimony … confuse the true issue, it also presents the unacceptable risk that the jury will feel obliged … to fashion an award that encompasses possible future injuries to persons.").

Third, Ray misapplies the paired sales analysis when calculating severance damages. Ray failed to account for the extent to which the loss of <u>easement areas themselves</u> reduced the value of the encumbered properties in each paired sale. Thus,

---

[2] United States v. Downing, 753 F.2d 1224 (3d Cir. 1985).

5

when Ray applies the percentages derived from the paired sales analysis to calculate the pipeline's impact on the remainder, he double-counts the value of the lost easement. This is an objective error, which causes Ray to over-calculate damages to the property. See Case No. 3:16-cv-276-J-32JRK, Doc. 70 at 21.[3]

The Court does not find that Ray's opinion about the pipeline's percentage impact on the remainder (which in these cases he opines ranges from –55% to –65%) to be inadmissible. Cf. Moody Daubert Order at 19. This is a matter for cross-examination. The Court also does not find the level of comparability of the paired sales (or alleged lack thereof) to be a basis for excluding Ray's opinion. When the sales of other properties are used as the basis for an expert's testimony, the requirement of showing similarity between the properties is less rigorous than when non-expert evidence of property sales is offered as substantive proof of value. See United States v. 0.161 Acres of Land, 837 F.2d 1036, 1040 (11th Cir. 1988) (citing United States v. 429.59 Acres of Land, 612 F.2d 459, 462 (9th Cir. 1980)). Moreover, the degree of comparability of sales goes to the weight of the evidence, not its admissibility. Columbia Gas Transmission, LLC v. 76 Acres, 701 F. App'x 221, 229-30 (4th Cir. 2017); E. Tenn. Nat. Gas Co. v. 7.74 Acres, 228 F. App'x 323, 327-29 (4th Cir. 2007).

---

[3] Additionally, when Ray assesses severance damages to parts of the remainder that were burdened by a preexisting easement (such as a powerline easement), he assumes the encumbered land retained its full value – he simply diminished the value of the property by a lower percentage. This is contrary to established appraisal principles, which require that if a property is already burdened by an easement, it should be valued in its encumbered condition, not as if it were unencumbered. Eaton, J.D., Real Estate Valuation in Litigation at 365 (Appraisal Institute, 2d ed. 1995).

Finally, Ray opines in two of the cases that Sabal Trail is liable for additional damages for such things as lost camping rental revenue and escaped livestock. In Case No. 3:16-cv-276-J-32JRK, Ray opines that Sabal Trail owes the owners, Carolyn and Richard McCulley, $60,000 for lost camping rental income. In Case No. 3:16-cv-318-J-32JRK, Ray opines that Sabal Trail owes the owners, Teddy Rucker, Jr., and Sherry Rucker, an additional $105,300 for escaped livestock, the cost of repairing a neighbor's feed cans, the cost of replacing damaged fencing, the cost of hay to replace lost grazing area, and the value of lost mature trees.

The landowners may well have a cause of action against Sabal Trail for these injuries, but they did not plead them by way of counterclaim or otherwise, and not all can be remedied under the rubric of "full compensation." "[T]he 'full compensation' mandated by article X, section 6 of the Florida Constitution is restricted to (1) the value of the condemned land, (2) the value of associated appurtenances and improvements, and (3) damages to the remaining land (i.e., severance damages)." System Components Corp. v. Fla. Dep't of Transp., 14 So. 3d 967, 976 (Fla. 2009) (citations and footnotes omitted). "The payment of compensation for intangible losses and incidental or consequential damages, however, is not required by the constitution, but is granted or withheld simply as a matter of legislative grace." Tampa-Hillsborough Cnty. Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So. 2d 926, 928 (Fla. 1983). Nor does "full compensation" encompass damages for loss of

personal property unless they are "trade fixtures" or "functional units,"[4] neither of which is applicable here. Fla. Dep't of Transp. v. Sun Islands Boats, Inc., 510 So. 2d 603, 604 (Fla. 3d DCA 1987).

The McCulleys' alleged loss of $60,000 in camping rental revenue is an intangible, consequential damage. If anything, such lost income is a "business damage." See Div. of Admin., Fla. Dep't of Transp. v. Ness Trailer Park, Inc., 489 So. 2d 1172, 1180-81 (Fla. 4th DCA 1986) (characterizing trailer park's lost rental income as a business damage). Yet "business damages" are not part of "full compensation." System Components Corp., 14 So. 3d at 975-76 (citations omitted). Business damages are available under § 73.071(3)(b), Fla. Stat., but only in narrow circumstances, including where the condemnee specifically pleads them (which the defendants did not do). Thus, the McCulleys' lost rental revenue is not recoverable under the rubric of "full compensation."

As for the Ruckers, the damages they claim for escaped livestock and the cost of repairing a neighbor's feed cans are not part of "full compensation" either, as these damages are incidental or for the loss of personal property. E.g., Colding v. Herzog, 467 So. 2d 980, 982 n.1 (Fla. 1985) (animals are personal property) (quoting § 200.01, Fla. Stat. (1967)); State v. Milewski, 194 So. 3d 376, 378 (Fla. 3d DCA 2016); ("Florida

---

[4] "Trade fixtures" and "functional units" are typically machinery or equipment installed on the property that cannot be removed without damaging the land. Dependable Air Conditioning and Appliances, Inc. v. Office of Treasurer and Ins. Comm'r, 400 So. 2d 117, 119 (Fla. 4th DCA 1981); see also Malone v. Div. of Admin., State of Fla. Dep't of Transp., 438 So. 2d 857, 860 (Fla. 3d DCA 1983), disapproved on other grounds by System Components Corp., 14 So. 3d at 981 n.20.

8

law considers animals to be personal property.") (citations omitted). However, the Ruckers may present evidence about the cost of replacing fences damaged by Sabal Trail, as fences appear to be "associated appurtenances."[5] System Components Corp., 14 So. 3d at 976 ("full compensation" includes the value of "associated appurtenances").[6] Likewise, the Ruckers may present testimony about the cost of purchasing hay to replace grazing area temporarily lost during pipeline construction. Florida law appears to be that the replacement cost approach is an acceptable appraisal method, along or in combination with the market approach and the income approach. Apopka Clear Lake Investments, LLC v. Sema Construction, Inc., No. 6:14-cv-881-Orl-41DAB, 2015 WL 12830495, at *8 (M.D. Fla. Nov. 13, 2015) (citing, inter alia, Havill v. Lake Port Props., Inc., 729 So. 2d 467, 470 (Fla. 5th DCA 1999); Bystrom v. Equitable Life Assurance Soc'y of U.S., 416 So. 2d 1133, 1144 (Fla. 3d DCA 1982)). Thus, evidence about the cost of hay to replace lost grazing area is admissible. Lastly, the Ruckers may present evidence about the value of the mature trees Sabal Trail cut down and removed from their land, which the Ruckers had planted for the purpose of harvesting pine straw and timber. Fla. Dep't of Agriculture and Consumer Servs. v.

---

[5] Black's Law Dictionary defines an "appurtenance" is "[s]omething that belongs or is attached to something else; esp., something that is part of something else that is more important." Black's Law Dictionary (10th ed., 2014).

[6] Indeed, it appears to be understood under Florida law that "full compensation" includes the cost of replacing damaged or destroyed fences. See Nalven v. Div. of Admin., 409 So. 2d 166, 167 (Fla. 2d DCA 1982) (both landowner's and condemnor's appraiser included assessments for damaged fencing), rev'd on other grounds by Dep't of Transp. of State of Fla. v. Nelven, 455 So. 2d 301 (Fla. 1984); LeSeur v. State Road Dep't, 231 So. 2d 265, 267 (Fla. 1st DCA 1970) (condemnor's appraiser included damages for the cost of relocating fencing).

9

Lopez-Brignoni, 114 So. 3d 1138, 1142 (Fla. 4th DCA 2012) (trial court correctly allowed the jury to consider the replacement cost of the owner's destroyed citrus trees); see also Dep't of Agriculture and Consumer Servs. v. Mid-Florida Growers, Inc., 570 So. 2d 892, 897, 899-900 (Fla. 1990) (citrus grower was entitled to present evidence about the value of nursery stock that was growing on the land at the time of the taking, both mature and immature, but not about potential stock yet to be planted). Accordingly, Ray may testify to some of the Ruckers' "additional damages," but the others are inadmissible because they are not awardable.

The Court notes what this Order does <u>not</u> do. This Order does not preclude Ray from testifying in general that there is a negative stigma or market fear associated with a natural gas pipeline, as substantiated by the market data. Nor does the Order preclude Ray from using the data in his comparative sales and paired sales studies to support his opinion (although he will be subject to cross-examination about it).

## II. Dr. Harris's Testimony

While the Court is not inclined to completely exclude Dr. Harris's testimony, it will likely circumscribe it. For example, the Court is uncertain whether to allow his testimony concerning his review of other literature. The Court will take a pretrial proffer of Dr. Harris's testimony, at which point it will determine to what extent it is admissible.

Accordingly, it is hereby **ORDERED:**

1. Plaintiff Sabal Trail's "<u>Daubert</u> Motion to Exclude Expert Testimony by Matthew Ray" is **GRANTED** to the extent described in this Order and

10

otherwise **DENIED**. No later than **June 15, 2018**, Ray should provide Plaintiff with an updated expert report in each case.

2. Plaintiff Sabal Trail's "<u>Daubert</u> Motion to Exclude Expert Testimony by Joshua A. Harris" is **DEFERRED.** Before trial, the Court will hear a proffer of Dr. Harris's testimony and rule on the extent of its admissibility.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of May, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

Lc 19

Copies:
Counsel of record